IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Armin Rudd, Individually and<br>d/b/a ABT Systems, LLC,<br>and The University of Central<br>Florida Board of Trustees on behalf<br>of the University of Central Florida,<br><br>　　　PLAINTIFFS,<br><br>　　vs.<br><br>Lux Products Corporation,<br>Emerson Climate Technologies,<br>Braeburn Systems, LLC, and<br>Lennox International Inc.<br><br>　　　DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 09-cv-6957 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
EMERSON CLIMATE TECHNOLOGIES' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM AND FOR IMPROPER JOINDER
OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER**

## TABLE OF CONTENTS

*Page*

I.   INTRODUCTION ................................................................................................ 1

II.  THE RUDD PATENT TECHNOLOGY ............................................................ 2

III. EMERSON IS LIABLE FOR INDUCING INFRINGEMENT

AND CONTRIBUTORY INFRINGMENT ...................................................... 3

    A. Emerson Induces Infringement by Others ............................................ 3

    B. Emerson is Liable for Contributory Infringement ............................... 6

IV.  EMERSON IS PROPERLY JOINED IN THIS ACTION ................................. 6

    A.  Rudd's Claims Against Emerson Arise Out Of The Same

       Transaction or Occurrence As The Other Defendants ................................. 7

    B.  Emerson Should be Consolidated With This Action

       For Pretrail Proceedings ................................................................ 10

V.   THE CASE AGAINST EMERSON SHOULD REMAIN HERE AND

NOT BE TRANSFERRED TO MISSOURI ..................................................... 11

    A. Convenience To The Parties and Witnesses Favors Illinois ......................... 12

       1.  Rudd's choice of forum, Illinois, is a very convenient

          forum for this action .......................................................... 12

       2.  The convenience of the witnesses favors Illinois. ................................ 13

       3.  The private interest factors favor Illinois. ........................................ 15

    B.  The Interest of Justice Clearly Favors Illinois ....................................... 15

VI.  CONCLUSION ................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

*Page(s)*

*Cases:*

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.,*
  501 F.3d 1307 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Androphy v. Smith & Nephew, Inc.,*
  31 F. Supp 2d 620 (N.D. Ill. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937 (2009). . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Bell Atl. Corp. v. Twombley,*
  550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Broadcom Corp. v. Qualcomm Inc.,*
  543 F.3d 683 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cambridge Filter Corp. v. International Filter Co., Inc.,* . . . . . . . . . . . . . . . . . . . . . . . 13
  548 F. Supp. 1308 (D. Nev. 1981)

*Coffey v. Van Dorn Iron Works,*
  796 F.2d 217 (7th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .. . . . .12, 15, 16

*F & G Scrolling Mouse, LLC v. IBM Corp.,*
  199 WL 311700 (N.D. Ill. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . .11, 13, 15, 16

*Golden Blount Inc. v. Robert H. Peterson Co.,*
  438 F.3d 1354 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hanley v. First Investors Corp.,*
  151 F.R.D. 76 (E.D. Tex. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lony v. E.I. DuPont Nemours & Co.,*
  886 F.2d 628 (3rd Cir. 1989). . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Magnavox Company v. APF Electronics, Inc.,*
  496 F.Supp. 29, 33 (N.D. Ill. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 10

*Malinckrodt v. E-Z-EM, Inc.,*
  2009 WL 4496021 (D. Del. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

*Media USA, L.P. v. Jobst Institute, Inc.,*
  791 F. Supp. 208 (N.D. Ill. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Minn. Mining & Mfg. Co. v. Chemque, Inc.,*
  303 F.3d 1294, 1304-05 (Fed .Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Cases:**                                                                   **Page(s)**

*Mitchell v. First Northern Credit Union,*
2007 WL 2948374 (N.D. Ill. Oct. 4, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*MLR, LLC v. U.S. Robotics Corp.,*
2003 WL 685504 (N.D. Ill. February 26, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mobil Oil Corp. v. W.R. Grave & Co.,*
334 F. Supp. 117 (S.D. Tex 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Moleculon Research Corp. v. CBS, Inc.,*
793 F.2d 1261, 1272 (Fed. Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*MyMail, Ltd. v American Online, Inc.,*
223 F.R.D. 455 (E.D. Tex 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 10, 11

*N.J. Mach., Inc. v Alford Industries, Inc.,*
1991 WL 340196 (D.N.J. October 7, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . : . . . . 7, 8

*Tissue Extraction Devices, LLC v. Suros Surgical Sys. Inc.,*
2008 WL 4717158 (N.D. Ill. May 20, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*United Mine Workers v. Gibbs,*
383 U.S. 715 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 11

*Vandeveld v Christoph,*
877 F. Supp. 1160 (N.D. Ill. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Von Holdt v. Husky Injection Molding Sys., Ltd.,*
887 F. Supp. 185 (N.D. Ill. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Statutes:**

Fed. R. Civ. P. 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

Fed. R. Civ. P. 20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7

Fed. R. Civ. P. 42. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11

28 U.S.C. 271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

28 U.S.C. 1400. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

28 U.S.C. 1404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Armin Rudd, Individually and d/b/a ABT Systems, LLC, and The University of Central Florida Board of Trustees on behalf of the University of Central Florida,<br><br>       PLAINTIFFS,<br><br>       vs.<br><br>Lux Products Corporation, Emerson Climate Technologies, Braeburn Systems, LLC, and Lennox International Inc.<br><br>       DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 09-cv-6957 |

**List of Exhibits in Support of Plaintiffs' Response
In Opposition To Emerson Climate Technologies' Motion To Dismiss
For Failure to State A Claim And For Improper Joinder
Or, In The Alternative, To Sever and Transfer**

Exhibit A –     Declaration of A. Rudd

Exhibit B –     Emerson Claim Charts

Exhibit C -     Braeburn Claim Charts

Exhibit D –     Lux Claim Charts

Exhibit E –     Lennox Claim Charts

Exhibit F -     Westlaw Caselaw

Exhibit G -     Federal Management Statistics 2008, District Courts, available at
http://www.uscourts.gov/cgi-bin/cmsd2008.pl

Exhibit H -     United States Patent Nos. 5,547,017 and 6,431,268 to Rudd

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Armin Rudd, Individually and<br>d/b/a ABT Systems, LLC,<br>and The University of Central<br>Florida Board of Trustees on behalf<br>of the University of Central Florida,<br><br>PLAINTIFFS,<br><br>vs.<br><br>Lux Products Corporation,<br>Emerson Climate Technologies,<br>Braeburn Systems, LLC, and<br>Lennox International Inc.<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 09-cv-6957 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
EMERSON CLIMATE TECHNOLOGIES' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM AND FOR IMPROPER JOINDER
OR, IN THE ALTERNATIVE, TO SEVER AND TRANSFER**

## I. INTRODUCTION

The plaintiffs (collectively "Rudd") filed an Amended Complaint in the Northern District

of Illinois for patent infringement against defendants Emerson Climate Technologies

("Emerson"), Lux Products Corp. ("Lux"), Lennox Indus. ("Lennox"), and Braeburn Systems,

LLC ("Braeburn") (collectively "Defendants") on December 10, 2009 (Docket No. 9). Emerson

has filed a motion to dismiss the Amended Complaint against it for failure to state a claim that

Emerson is liable for direct infringement, contributory infringement or inducing infringement by

1

others pursuant to Fed. R. Civ. P. 12(b)(6), and for improper joinder pursuant to Fed. R. Civ. P. 20 (Docket No. 29-1). Rudd opposes this motion because: there is ample evidence showing that Emerson is liable for contributory infringement and inducing infringement (as shown below in Section III.); and joinder was proper (as shown below in Section IV).

If its motion to dismiss is not granted, Emerson also asks that the claims against it be severed from this action, and that the action against Emerson be transferred to the Eastern District of Missouri. Rudd opposes this motion as his choice of forum, the Northern District of Illinois, is more convenient under the circumstances (see Section V).

## II.    THE RUDD PATENT TECHNOLOGY

In Central Air Conditioning (CAC) systems, a central heating or air cooling unit produces heated or cooled air. Normally, this conditioned air is directed through various ducts located throughout a building, and moved through the ducts using blowers or fans. Programmable thermostats control the operation of heating, cooling and air movement based on preselected parameters. Before the United States Patent Nos. 5,547,017 and 6,431,268 (collectively "the Rudd Patents," Exhibit H), fans in CAC systems for residential homes normally operated only when the CAC system was operating in a heating or cooling mode. Alternatively, the fans were left running all the time, with a corresponding waste of energy and power ('017 Rudd Patent, Exhibit H, col. 1, lines 15-38).

With some systems, the fan might continue to run after the heating or cooling unit has been shut off to remove residual conditioning capacity from the unit and ducts. However, before the Rudd Patents, the fan was not directly controlled to turn on or off based on the last time that the heating or cooling unit, or a constant fan mode, had been operated. (*Id.*, col. 1, lines 40-52). This provides a more effective, efficient and less wasteful CAC system, and the industry has

2

moved in this direction. As a consequence, Rudd has licensed a number of companies in the industry, while others like the defendants have chosen not to take a license

## III. EMERSON IS LIABLE FOR INDUCING INFRINGEMENT AND CONTRIBUTORY INFRINGEMENT

As defendant Emerson concedes, the complaint must only "create a plausible basis for the claimed relief." (Emerson Mem., Docket No. 29, pg. 2 (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). If a complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the complaint is "plausible on its face," and will survive a motion to dismiss under Rule 12(b)(6), *Malinckrodt v. E-Z-EM, Inc.*, 2009 WL 4496021, *3 (D. Del. 2009) [1] (citing *Ashcroft*, 129 S. Ct. at 1949. That is certainly the case here regarding Emerson's liability for inducing infringement and contributory infringement.

### A. Emerson Induces Infringement by Others

"A defendant shall liable as an infringer for actively inducing infringement of a patent." 28 U.S.C. § 271 (b). Inducement is established by showing "first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.,* 501 F.3d 1307, 1312 (Fed. Cir. 2007) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304-05 (Fed. Cir. 2002); *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 697 (Fed. Cir. 2008)).

The Rudd Patents claim a fan recycling control for an air conditioning system (Exhibits to Amended Complaint, Docket No. 9-2). The claim components are: (1) a circulating fan; (2)

---

[1]    Cases cited in Westlaw are attached at Group Exhibit F.

an air conditioning system with ducts; and (3) a thermostat for controlling the air conditioning system and the circulating fan. The novelty of the Rudd patents lies in the way the thermostat controls the air conditioning system in conjunction with the circulating fan. How the thermostat works controls the infringement inquiry.

Defendant Emerson provides thermostats utilizing a fan recycling control, such as the Big Blue Universal Thermostat (Model No. 1F95-1277) and Big Blue Single Stage Thermostat (Model No. 1F97-1277), to consumers in the United States. (Docket No. 9, ¶17). While it is true that Emerson is not directly infringing if it does not supply the ductwork and circulating fan with its programmable thermostats, direct infringement is nonetheless occurring. Those of ordinary skill in this art understand that with every programmable thermostat that Emerson sells, associated ducts and circulating fans will necessarily be supplied for the installation and intended use of the thermostats. All modern air conditioning systems that use such thermostats use ducts and circulating fans (Declaration of A. Rudd, Exhibit A, ¶¶4-5). *See Moleculon Research Corp. v CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) (holding that circumstantial evidence of extensive sales and dissemination of an instruction sheet can support a finding of direct infringement by the customer).

Furthermore, the instruction manuals for Emerson's accused thermostats' instruction manuals encourage and direct contractors to use those thermostats in an infringing manner (Emerson Instruction Manuals: Big Blue Universal Thermostat (Model No. 1F95-1277), and Big Blue Single Stage Thermostat (Model No. 1F97-1277), Exhibit B, Tabs 2 and 3, pg. 1: "Applications"). Emerson's thermostats are designed to connect to an air conditioning system, such as a central air conditioning system with ducts and a circulating fan (Exhibit A, ¶5). The thermostats are also designed to control a circulating fan and the air conditioning system (Exhibit

4

B, Tab 2, pg. 7 and Tab 3, pg. 8: "Operating Your Thermostat: Choose the Fan Setting"). The 1F95-1277 Thermostat controls the fan, such that in the fan PROG mode, "the fan will run the fan when the heating and cooling system is on. In addition, when the thermostat has not called for heating or cooling for more than 60 minutes, it will begin to cycle the fan for 10 minutes on and 20 minutes off to improve indoor air quality." (Exhibit B, Tab 3, pg. 7: "Operating Your Thermostat: Choose the Fan Setting"). The PROG fan mode of the ECT Thermostat Model No. 1F97-1277 "will cycle the fan for -10 minutes on and 20 minutes off – if the thermostat has not called for heat or cool during the past 60 minutes. (Exhibit B, Tab 3, pg. 8: "Operating Your Thermostat: Choose the Fan Setting").

Emerson long had knowledge of the '017 Rudd Patent based, at least, on previous correspondence from the inventor, Armin Rudd, to Emerson's Product Manager, Mr. John Sartain, discussing the patented technology (Exhibit B, Tab 1, A. Rudd to J. Sartain correspondence).

Emerson's prior knowledge of the Rudd Patents, coupled with its supply of the thermostat manuals, is certainly sufficient at the pleading stage to show a plausible basis for inducement of infringement under 35 U.S.C. §271(b). *Golden Blount Inc. v. Robert H. Peterson Co.*, 438 F. 3d 1354, 1364 n. 4 (Fed. Cir. 2006) ("...[I]t is undisputed that Peterson had notice of the patent following a December 1999 letter and that Peterson provided the DX34 instruction sheet to customers directing them to perform specific acts leading to the assembly of infringing devices, from which the district court could draw an inference of intent sufficient to meet [the inducement standard]").

### B.  Emerson is Liable for Contributory Infringement

Similarly, Emerson's liability for contributory infringement certainly meets the plausibility standard at this stage of the lawsuit. The contributory infringement statute recites:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer. 28 U.S.C. §271 (c).

Correspondence between Mr. Rudd and Mr. Sartain shows that Emerson had prior knowledge of at least the '017 Rudd Patent (Exhibit B, Tab 1). Further, programmable thermostats, used in the manner Emerson directs, are material parts of the invention especially adapted for use in an infringement of the Rudd Patents (*see* section II. A. above), and clearly not "staple" goods. This is sufficient to show contributory infringement under 35 U.S.C. §271(c). [2] *See Malinckrodt*, 2009 WL 4496021, at *3 (If a complaint pleads factual content for the court to reasonably infer that the defendant is liable, "then the complaint is 'plausible on its face,' and will survive a motion to dismiss under Rule 12(b)(6).") (citing *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 555 (2007)).

## IV.  EMERSON IS PROPERLY JOINED IN THIS ACTION

Emerson contends that it was improperly joined in this action under Fed. R. Civ. P. 20, which provides that multiple defendants may be joined in a single action if two requirements are

---

[2]  Since it is apparent that Rudd can meet the relatively low bar of "plausibility" pleading required here for inducing and contributory infringement – indeed, he believes he could meet the summary judgment standard given the evidence provided here – if the Court finds the Complaint deficient, Rudd requests leave to file an amended complaint specifically alleging infringement against White-Rodgers/Emerson Electric Co., and pleading more specific facts as recited here.

met: "(a) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (b) any question of law or fact common to all defendants will arise in the action." Emerson concedes that the construction of the claims of the same patents asserted here provides a common question of law between the defendants (Emerson Mem., Docket No. 29, pg. 5). Thus, the dispute is whether the "same transaction or occurrence" requirement is met here for proper joinder. The requirement is met, and Emerson was properly joined in this action, as shown below.

### A. Rudd's Claims Against Emerson Arise Out Of The Same Transaction or Occurrence As The Other Defendants

The "same transaction or occurrence" requirement is met here because all of the defendants' accused thermostats operate in a nearly identical infringing manner. "Transactions or occurrences satisfy the series of transactions or occurrences requirement of Fed. R. Civ. P. 20(a) if there is some connection or logical relationship between the various transactions or occurrences." *MyMail, Ltd. v. Americal Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex 2004) (citing *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993). A logical relationship exists if there is some nucleus of operative facts or law. *Id.*

It is true, as Emerson argues, that infringement of the same patent by different defendants does not *automatically* satisfy the same transaction requirement. (Docket No. 29, pg. 6 (citing *e.g. Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) and *N.J. Mach., Inc. v. Alford Indus. Inc.*, 1991 WL 340196, *1 (D.N.J. Oct. 7, 1991)). However, in *Androphy*, the Court held that there was no common transaction or occurrence because the defendants infringed same patents but sold different products. *Androphy*, 31 F. Supp. 2d at 623. In *New*

*Jersey Machine*, there was no common transaction or occurrence because the defendants were unrelated and sold different machines, and the plaintiffs did not allege or support any connection or similarity between the different machines. *N.J. Mach., Inc.*, 1991 WL 340196, *2.

Here, each of the defendants' accused thermostats operate in the identical, or nearly identical manner, *as it relates to the asserted patent claims*. For example, the Rudd Patent claims recite the use of a recycle fan control that is triggered on or off after a predetermined period following the switch off of the heating or AC control (*see e.g.* Docket No. 9-2, pg. 13 claim 1, pg. 25 claim 1). As seen in the defendants' claim charts (Exhibits B-E)[3] and as explained below, the defendants' thermostats operate in a nearly identical manner in relation to these claims. More specifically, each accused thermostat operates in modes in which the recycle fan is run for about 12 – 15 minutes per hour after a delay since the heating/AC is turned off, as shown below.

Defendant Braeburn sells the Premier Series Non-Programmable Thermostat Model Nos. 3000 and 3200 and the Premier Series Programmable Thermostat Model No. 5000, which are designed to control a circulating fan. The thermostat has a "Recirculating Fan Mode" in which fan will activate and deactivate after a preselected period: (i) 3000 and 3200 Models: "If no call for heating or cooling occurs within the fan off cycle set in section 4, the fan will run for 12 minutes. The highest setting, 60 minutes, will run the fan least often – 17% minimum run time. The lowest setting, 24 minutes (factory default), will run the fan most often – 33% minimum run time."; (ii) 5000 Model: "If no call for heating or cooling occurs within the fan off cycle set in section 4, the fan will run for 12 minutes. The highest setting, 120 minutes (factory default), will

---

[3] These claim charts are preliminary. Plaintiffs reserve the right to amend these claim charts as discovery progresses in the case.

run the fan least often – 9 % minimum run time. The lowest setting, 40 minutes, will run the fan most often – 23% minimum run time." (Exhibit C, Tab 2 at Section 5, pg. 6 "Recirculating Fan Mode" and Tab 3 at Section 5, pg. 11 "Recirculating Fan Mode").

Similarly, defendant Lux sells the Lux LUXPRO PSP711CC series and CAG1500 series also designed to control a circulating fan. The thermostat has a Clean Air Cycle mode: CLEAN (Exhibit D, Tabs 2 and 3, "Operating Instructions"). The CLEAN fan mode, "insures that your system's fan runs at least the programmed minimum duty cycle. The default duty cycle requires it to run 15 minutes every hour." *Id.*

Defendant Lennox sells the ComfortSense® 7000 and Signaturestat™ Dave Lennox Signature™ Collection thermostats also control a circulating fan. These thermostats have fan CIRC and INTERMITTENT modes, respectively (Exhibit E, Tab 2 "Touch Screen Display," pg. 3 and Tab 3, "Main Menus Display," pg. 1). The ComfortSense® 7000 thermostats' CIRC mode is described as "Intermittent fan operation when equipment is not operating. The fan operates for a programmed percentage of time per hour, and is adjustable to 15%, 25%, 35%, and 45% for improved circulation." (Exhibit E, Tab 2, "Touch Screen Display," pg. 3). The Signaturestat™ thermostat has an INTERMITTENT mode, which "will turn the fan on for a set period of time for a given interval when the heating or cooling equipment is idle. The thermostat will cycle the fan on for the set ON cycle. The fan will remain off for the set OFF cycle. If the HVAC system runs for a longer period than the ON cycle, the OFF cycle will start counting over again when the system shuts off." (Exhibit E, Tab 4, pg. 6).

Emerson's accused thermostats, as shown above in Section III. A, control a circulating fan, similarly to the Braeburn, Lux and Lennox thermostats, and thus the defendants' products operate in the same relevant manner. Further, the other recited limitations in the patents are

9

similarly met by Emerson and the other three defendants (Exhibits B-E). Thus, the thermostats function sufficiently similar and create a common nucleus of common law and facts, satisfying the requirement of a common transaction or occurrence. *MyMail,* 223 F.R.D. at 457 ("[T]he Court finds that there is a nucleus of operative facts or law in the claims against all the defendants and, therefore the claims against the [] Defendants do arise out of the same series of transactions or occurrences as the other defendants.")

**B.      Emerson Should Be Consolidated With This Action**
**          For Pretrial Proceedings**

Even if the Court finds that Emerson was improperly joined because the same transaction or occurrence is not found to exist between the defendants, actions involving "a common question of law or fact" may be consolidated. Fed. R. Civ. P. 42(a). *See MLR, LLC v. U.S. Robotics Corp.,* 2003 WL 685504, *3 (N.D. Ill. Feb. 26, 2003).

Here, all defendants are accused of infringing the same patents, and as explained above in Section IV.A., the accused products function in a substantially similar way. Thus, many questions of law and fact regarding the patents and the accused thermostats will be the same. For example in the discovery stage, it is likely that the infringement issue for each defendant will involve the same types of documents, technical reports and deponents. Thus, to promote efficiency, even if Emerson's case is severed, the case should nonetheless be consolidated with this action, especially for the purpose of pretrial proceedings. *Magnavox Company v. APF Electronics, Inc.,* 496 F. Supp. 29, 33 (1980); *MLR,* 2003 WL 685504, *3 (given the overlapping common questions of law and fact, two separate cases involving defendants accused of infringement of the same six patents, is ripe for consolidation with that case under Fed. R. Civ. P 42(a)). *See also Magnavox,* 496 F. Supp. at 32 ("Defendants' arguments concerning the right to

10

a jury trial and the possibility of prejudice, although meritorious, were precipitous. Should a

need arise to sever certain parties or issues at a later stage of the litigation, Fed. R. Civ. P. 42(b)

provides an appropriate remedy"). At this stage in the litigation, to sever Emerson from the other

three defendants, and require Rudd to try a second case in the Eastern District of Missouri would

be unduly burdensome and duplicative. *MyMail,* 223 F.R.D. at 457-8 (citing *United Mine*

*Workers v. Gibbs,* 383 U.S. 715, 724 (1966)) ("'Under the [Federal Rules of Civil Procedure],

the impulse is toward entertaining the broadest possible scope of action consistent with fairness

to the parties; joinder of claims, parties and remedies is strongly encouraged.'").

## V.     THE CASE AGAINST EMERSON SHOULD REMAIN HERE AND NOT BE TRANSFERRED TO MISSOURI

Emerson argues that its  case should be transferred to the Eastern District of Missouri

pursuant to 28 U.S.C. § 1404(a) because that is where its witnesses and evidence are located.

However, transferring the case to Missouri will not be more convenient to the witnesses or

parties; nor is it in the interest of justice.

"Under §1404(a), a court may transfer a case if the moving party shows that: (1) venue

was proper in the transferor court, (2); venue and jurisdiction would be proper in the transferee

court; and (3) the transfer will serve the convenience of the parties and the witnesses as well as

the interests of justice." *F & G Scrolling Mouse, LLC v. IBM Corp.*, 1999 WL 311700, *2 (N.D.

Ill 1999). To determine convenience, the private and public interest of the court must be

considered. "The private interests of the parties include: (1) plaintiff's choice of forum; (2) situs

of material events; (3) relative ease of access to sources of proof in each forum, including the

court's power to compel appearance of unwilling witnesses at trial; and (4) costs of obtaining

attendance of witnesses. Public factors include the courts familiarity with applicable law and the

11

desirability of resolving controversies in their locale." *Mitchell v. First Northern Credit Union,* 2007 WL 2948374, *2 (N.D. Ill. Oct. 4, 2007) (citing *Media USA, L.P. v. Jobst Institute, Inc.,* 791 F. Supp. 208, 210 (N.D. Ill. 1992)). However, the movant bears the burden of establishing that the transferee district is "clearly more convenient." *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219-220 (7th Cir. 1986).

Here, venue is proper in Illinois and Missouri. 28 U.S.C. § 1400(b). Emerson also admits that it is subject to personal jurisdiction here and in the transferee court. (Emerson Mem., Docket No. 29, pg. 8-9). The issue is whether the transfer will be convenient to the parties and witnesses, as well as the interests of justice. Convenience to the parties and witnesses, as well as the interests of justice favors staying here.

### A.  <u>Convenience To The Parties and Witnesses Favors Illinois</u>

#### 1. Rudd's choice of forum, Illinois, is a very convenient forum for this action

Rudd admits it is a foreign plaintiff with Illinois counsel. However, Illinois is a very convenient forum for Rudd and the four defendants in this action. If a foreign plaintiff can make a "strong showing of convenience with respect to its chosen forum, its decision may be entitled to deference." *See Lony v. E.I. DuPont Nemours & Co.,* 886 F.2d 628, 634 (3rd Cir. 1989) ("Because the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one, that reluctance can readily be overcome by a strong showing of convenience.")

Illinois is a central location for the plaintiff and all of defendants in this action. Emerson is in Missouri; Lux has a principal place of business in New Jersey, but has agreed to litigate in the Northern District of Illinois (Fed.R.Civ.P. 12(b)(3) ("A motion asserting any of these defenses must be made before pleading...."); Fed.R.Civ.P. 12(h)(1)(B)(ii) ("A party waives any

defense listed in Rule 12(b)(2)-(5) by: failing to [] include it in a responsive pleading….")); Braeburn is located in Montgomery, Illinois, and its attorney Dillis Allen is in the Chicago area as well; and Lennox has a principal place of business in Richardson, just outside Dallas, Texas, and is currently in settlement negotiations with Rudd, and is using counsel located in Chicago.

Moreover, for Rudd, the location of his counsel is a relevant, but not decisive factor because the cost of counsel's transportation to trial and living expenses in a second forum must be born by the plaintiff. *F & G*, 1999 WL 311700, *2 ("This is not a decisive factor, but to the extent it is relevant here, it favors Plaintiffs, since they would not have to retain local counsel if the case proceeded in Chicago.") (citing *Cambridge Filter Corp. v. International Filter Co., Inc.*, 548 F. Supp. 1308, 1310 (D. Nev. 1981) and *Mobil Oil Corp. v. W.R. Grave & Co.*, 334 F. Supp. 117, 124 n. 5 (S.D. Tex 1971) (consideration of presence of counsel in the putative transferor district directly bears on convenience and cost) *But cf. Von Holdt v. Husky Injection Molding Sys., Ltd.,* 887 F. Supp. 185, 190 (N.D. Ill. 1995) ("the convenience to a plaintiff's counsel was not a proper consideration.").

For these reasons, Rudd has made a strong showing of convenience here. In *Tissue Extraction Devices, LLC v. Suros Surgical Sys. Inc.,* 2008 WL 4717158, at *7 (N.D. Ill. May 20, 2008), cited by Emerson (Docket No. 29, pg. 9), the plaintiff's choice of forum was not home and no parties resided there. That Rudd will litigate this case in Illinois with Illinois counsel against three other defendants, one located in Illinois, and the others agreeing to litigate there, demonstrates that Illinois is a convenient forum for Rudd.

### 2. The convenience of witnesses favors Illinois

Armin Rudd is an individual inventor and, as the exclusive licensor of the patents-in-suit, is charged by his license with the patent owner, the University of Central Florida (UCF), with

13

enforcing the patents. If Emerson's case were transferred to Missouri, it would be highly inconvenient and expensive for Rudd to enforce his patents against Emerson in a second remote forum in addition to the pending case in Illinois.

Armin Rudd is in Pennsylvania and UCF is in Florida. Missouri is farther away than Chicago for both plaintiffs, so it is a less convenient locale for them to travel. In addition Rudd and UCF will also need to travel to Illinois to litigate against the other three defendants, a duplicate cost.

The remaining three defendants, Lux, Braeburn and Lennox, will potentially have witnesses across the country as well, likely including in New Jersey, Illinois and Dallas, respectively. Also, these defendants' business records will be in disparate locations. At least Illinois is a central location to all, and is favored by Rudd, Lux and Braeburn.

Additionally, potential third-party witnesses, relating to all of the defendants (including Emerson), such as: HVAC equipment wholesalers/distributors, supplying accused thermostats along with circulating fan(s) and ductwork; HVAC dealers/contractors, supplying accused thermostats along with circulating fan(s) and ductwork; and builders delivering houses with accused thermostats along with circulating fan(s) and ductwork, are located everywhere across the country. (Declaration of A. Rudd, Exhibit A, ¶6). The convenience of non-party witnesses "is often viewed as the most important factor in the transfer analysis." *F&G*, 1999 WL 311700, *4 (Noting that if the non-party witnesses are found neither in the transferee nor the transferor forum, they are less significant to the court's inquiry, because neither choice of venue would afford the parties greater subpoena power). Here, neither forum is favored for third party witnesses.

The fact that Emerson documents and witnesses are located in St. Louis does not outweigh the burden imposed on Rudd and the other defendants in the case. *F & G*, 1999 WL 311700, *3 ("[T]he court suspects that the inconvenience to the [plaintiffs], who will have to make several trips, outweighs the inconvenience of the added witness transportation expense to a large corporation like [defendant]. Thus, the court concludes that convenience of the parties slightly favors [plaintiffs].")

### 3. The private interest factors favor Illinois

As shown above, the private interest factors favor Rudd's choice of forum. Plaintiff's choice of forum is clearly convenient to Rudd who will be litigating in Illinois, a centrally located forum, against the other three defendants in this case. Rudd agrees with Emerson that the situs of material events is a neutral factor. (Docket No. 29, pg. 10). Regarding the ease of access to evidence and convenience of witnesses, while Emerson's principal place of business in Missouri, party witnesses and third-party witnesses are located across the country, and if Emerson is in a second separate action against Rudd, Rudd will have to bear the cost twice. Also, all of Rudd's documents relating to the patents are in his counsel's possession in Illinois. Thus, evidence and witness convenience, if not leaning in favor of Rudd, is at least a neutral factor.

### B. The Interest of Justice Clearly Favors Illinois

The "interest of justice" is a separate component of the §1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir 1986). Other "factors include the courts familiarity with applicable law and the desirability of resolving controversies in their locale." *Mitchell*, 2007 WL 2948374, *2 (citing *Media*, 791 F.

15

Supp. at 210). Regarding the interests of justice, having one case against the three defendants in Illinois and a second in Missouri makes little sense to the efficient functioning of the courts. *See F & G*, 1999 WL 311700, *5 (citing *Coffey*, 796 F.2d at 219-20 ("The interest of justice analysis relates to the efficient functioning of the courts, not to the merits underlying the dispute.'"))

As explained above in Section IV, above, it is likely that the infringement issue for all of the defendants will involve the same types of documents, technical reports and deponents, which will lead to duplicative discovery issues and arguments for each court to hear and decide. Further, each court will construe the same claims and hear highly similar infringement issues and likely identical validity defenses. Because the pending cases have so many related issues, trying related litigation together in Illinois would be the most effective functioning of the courts. *See Coffey*, 796 F.2d at 221 (7th Cir. 1986); *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1169 (N.D.Ill. 1995).

Rudd agrees with Emerson that the "court's familiarity with applicable law" is a neutral factor. (Docket No. 29, pg. 13). However, regarding the "speed of proceeding," Rudd believes this factor favors Illinois. Emerson diminishes the significance of the Federal Court Statistics that Illinois is 1.4 months faster than Missouri regarding the median time from filing to disposition, calling it neutral (Federal Management Statistics 2008, District Courts, available at http://www.uscourts.gov/cgi-bin/cmsd2008.pl, Exhibit G). Rudd disagrees. Most civil cases do not end in a trial, so this is a more relevant number, than the fact that the length to trial slightly favors Missouri by six months.

Further, a Missouri, will also be very inefficient for the Federal Court system. The Court resources expended on two nearly identical proceedings to disposition or trial, will be

16

unnecessarily spent. Thus, because the interest of justice clearly favors that the case against Emerson proceed here, in Illinois, the case should not be transferred.

## VI. CONCLUSION

Rudd has certainly met the "plausibility" standard for pleading inducing infringement and contributory infringement, and Emerson was properly joined in this action. For these reasons, Emerson should not be dismissed. Emerson's case should at least be consolidated with the cases pending against the other defendants for pretrial purposes, and should not be transferred to the Eastern District of Missouri.

Dated: January 29, 2010

Respectfully submitted,

/s/ Michael P. Mazza
Michael P. Mazza (IL Bar No. 6201609)
Dana L. Drexler (IL Bar No. 6291515)
Michael P. Mazza, LLC
686 Crescent Blvd.,
Glen Ellyn, IL 60139
P: 630-858-5071
E-Mail: mazza@mazzallc.com
*Attorneys for the Plaintiffs*

17

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of the PLAINTIFF ABT SYSTEMS, LLC'S RESPONSE IN OPPOSITION TO EMERSON CLIMATE TECHNOLOGIES' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND FOR IMPROPER JOINDER OR, IN THE ALTERNATIVE, TO SEVER AND TRANFSER and accompanying Exhibits A-via the Court's CM/ECF system pursuant to L.R. 5.9 on January 29, 2010. All other counsel will be served as indicated below:

Via First Class Mail
Dillis V. Allen, Esq.
105 S. Roselle Road
Suite 101
Schaumburg, IL 60193

/s/ Dana L. Drexler